T.C. Summary Opinion 2003-104

UNITED STATES TAX COURT

ROBERT C. HENRY II, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7797-01S.                    Filed July 25, 2003.

Robert C. Henry II, pro se.

Robert D. Kaiser, for respondent.


COUVILLION, Special Trial Judge:  This case was heard
pursuant to section 7463[1] in effect at the time the petition was
filed.  The decision to be entered in this case is not reviewable
by any other court, and this opinion should not be cited as
authority.

---

[1]   Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the years at issue.  Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|------------|----------------------------------------|
| 1995 | $31,272 | $6,254 |
| 1996 | 24,507 | 4,901 |
| 1997 | 16,344 | 3,269 |

After concessions by the parties, noted hereafter, the issues for decision are: (1) Whether petitioner is entitled to a reduction in the amount of unreported gross receipts determined by respondent in connection with petitioner's trade or business activity for the years in question, and (2) whether petitioner, for said years, is liable for the accuracy-related penalties under section 6662(a).

During the years at issue, petitioner owned and operated a funeral home as a self-employed activity. He is a licensed embalmer, mortician, and funeral director. The business originated with his father in 1950. Petitioner grew up working in the business. He attended mortuary school at Cincinnati, Ohio, graduated in 1976, and, in due course, became certified as a mortician. He returned to his father's funeral home, and his entire career has been with that business. Petitioner's father died in 1981, leaving his widow and two sons, petitioner and Allan Henry (Allan). Their mother donated the funeral home to

petitioner and Allan. Allan was not a mortician; however, he had a background in business, and he was responsible for the business operations of the home, which included maintaining the books and records and providing all information necessary to the accountant who prepared petitioner's income tax returns. The funeral home has never been incorporated as a business entity.

Sometime in 1981 or 1982, Allan developed a drug dependency, and, as petitioner testified, "we had to send him away to treatment." At that time, Allan conveyed his interest in the funeral home to petitioner, and petitioner has since been the sole owner of the home. Upon his return from treatment for his drug addiction, Allan resumed his employment with the funeral home. At some point in time, Allan resumed his dependency on drugs, unbeknownst to petitioner.

Petitioner's time and attention were devoted exclusively to conducting funerals and performing other attendant services. He was not involved in the recordkeeping or business end of the funeral home operation. He relied on his brother for that, although he occasionally reviewed the list of people who owed money to the home and directed the issuance of reminder notices to such delinquents. Allan compiled all the necessary information upon which the accountant annually prepared petitioner's income tax returns, which included the operations of the funeral home on Schedule C, Profit or Loss From Business.

For the years at issue, the gross income, expenses, and net
profit (or loss) of the funeral home were reported by petitioner
on his Federal income tax returns as follows:

|  | 1995 | 1996 | 1997 |
|---|---|---|---|
| Gross income | $43,274 | $59,144 | $45,430 |
| Total expenses | 48,112 | 53,023 | 41,162 |
| Net profit (loss) | ($ 4,838) | $ 6,121 | $ 4,268 |

The gross income amounts shown were based on reported gross
receipts of $58,552, $82,501, and $60,251, respectively, for the
3 years.

Petitioner's income tax returns for the 3 years in question
were selected for examination by the Internal Revenue Service.
As a result of that examination, it was revealed that Allan had
been diverting funds from the funeral home's gross receipts to
support his drug dependency.  Following this disclosure,
petitioner dismissed his brother from his duties with the funeral
home.  The examination also revealed inadequacies in the books
and records of the funeral home, and respondent determined the
gross receipts of the business by use of the bank deposits
method.  In the notice of deficiency, respondent determined that
petitioner underreported the gross receipts of the funeral home
in the amounts of $98,608, $99,779, and $73,224, respectively,
for the years in question.  In making this determination,
respondent allowed and did not include in the unreported gross

receipts determination amounts mutually agreed upon with petitioner representing funds that Allan had diverted to fund his drug dependency. Respondent also determined that petitioner failed to include on his returns interest income of $138, $361, and $15, respectively, for the 3 years in question. Petitioner conceded the unreported interest income at trial. Petitioner also conceded the unreported gross receipts but contends respondent failed to allow other adjustments described below, thus framing the principal issue before the Court.

The funeral home's gross receipts came from three sources:

(1) Payments made directly to the funeral home by the families or relatives of the deceased;

(2) Payments received directly from insurance companies; and

(3) Payments from "Pre-need funeral contracts" that represented the conversion of amounts previously paid by individuals of their anticipated funeral expenses.

The practice at petitioner's funeral home was to issue receipts only for the payments directly made to the home described in situation (1) above. Although statements were issued in situations (2) and (3) above, no receipts were issued for such payments. In submitting the income and expense information to petitioner's income tax return preparer each year, Allan submitted only the direct payments received from customers and did not submit the income received in situations (2) and (3)

above.   Petitioner agreed to respondent's determination of unreported gross receipts but contended at trial that the bank deposits method utilized by respondent failed to include adjustments for the following:

(1) $325 paid to the funeral home during 1995 that represented reimbursement of amounts paid by the funeral home to a cemetery for the burial of a former employee of the funeral home during 1993;

(2) Certain deposits made to the funeral home's bank account during 1995 that represented payments by friends of petitioner who, along with petitioner, went on a vacation cruise; and

(3) Certain intra-account transfers of approximately $40,000 between the checking and savings accounts of the funeral home during 1996 that were not adjusted by respondent (and thus were counted twice).

On this record, the Court agrees with petitioner that the unreported gross receipts for 1995 should be reduced by $325. The Court is satisfied from petitioner's testimony that the $325 represented reimbursement for an amount paid by petitioner during 1993 for which petitioner did not claim a deduction for Federal income tax purposes.  At trial, respondent conceded, in connection with petitioner's second argument above, that petitioner was entitled to a reduction of $3,080 in the determined gross receipts for 1995.  As to petitioner's third

contention above, relating to intra-account transfers, since no documentary evidence was submitted to substantiate that argument, the Court finds that petitioner is not entitled to an additional reduction of the determined unreported gross receipts for 1996.

The Court next considers respondent's determination that petitioner is liable for the accuracy-related penalties under section 6662(a) for each of the years in question.

Section 6662(a) provides for an accuracy-related penalty equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence consists of any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and disregard consists of any careless, reckless, or intentional disregard. Sec. 6662(c). The courts have refined the Code definition of negligence as a lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances. An exception applies when the taxpayer demonstrates (1) there was reasonable cause for the underpayment, and (2) the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c). Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances. The most important factor is the extent of the taxpayer's effort to assess the proper tax liability.

Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs. Under section 1.6664-4(b)(1), "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."

The deficiencies in this case, except for the nominal unreported interest income amounts, are solely attributable to the actions of Allan in not providing to petitioner's income tax return preparer, an accountant, all the sources of receipts of petitioner's business income. In addition, Allan was addicted to drugs, although the Court acknowledges that the deficiencies determined by respondent do not include income that was diverted by Allan to sustain his drug habit. Nonetheless, the Court is satisfied from the evidence that petitioner was not aware of the problem with Allan and was unaware that Allan was under reporting the gross receipts of the funeral home to petitioner's return preparer. Not until petitioner's returns were examined by respondent did petitioner learn that substantial amounts of his income were being diverted by Allan for his drug addiction, and that Allan was not providing the correct gross receipts information to the return preparer. Petitioner acknowledged at trial that, after the 1996 and 1997 returns were prepared, his

accountant (and return preparer) indicated to him that he had some concern about the returns, that "your taxes are not what they should be", and there was something that did not "measure up". Petitioner discussed this concern with Allan, who assured him that the information on the returns was accurate. Petitioner trusted Allan at the time and made no further inquiries into the matter. Moreover, petitioner's accountant never suggested any specific areas on the returns that were suspect. After the audit of his returns and the reasons for the shortcomings came to light, petitioner dismissed his brother from the business and conceded to the adjustments, except for the issues discussed, portions of which were conceded by respondent and, in one instance, allowed by the Court.

On this record, the Court holds that petitioner is not liable for the accuracy-related penalties under section 6662(a) for the 3 years in question. The circumstances described satisfy the Court that there was an honest ignorance of the facts by petitioner regarding Allan's actions in failing to report all the gross receipts of the business. However, the Court sustains petitioner's liability for the accuracy-related penalties for the 3 years in question for that portion of the deficiencies attributable to the unreported interest income.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered under Rule 155.</u>